LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Proposed Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BACHI BURGER, L.L.C.,<br><br>Debtor. | Case No.: BK-S-18-16584-abl<br>Chapter 11<br>(Joint Administration Pending) |
| In re:<br><br>GREEN REVOLUTIONS LLC,<br><br>Debtor. | Case No.: BK-S-18-16584-btb<br>Chapter 11<br><br>Date: OST PENDING<br>Time: OST PENDING |

***AMENDED*** **EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 363, AND 506, AND FED. R. BANKR. P. 4001(b) FOR ENTRY OF INTERIM AND FINAL ORDERS (A)(I) AUTHORIZING THE USE OF CASH COLLATERAL, AND (II) GRANTING RELATED RELIEF, AND (B) SCHEDULING A FINAL HEARING**

Bachi Burger, L.L.C., a Nevada limited liability company ("Bachi Burger"), and Green Revolutions LLC, a Nevada limited liability company ("Green Revolutions" and together with Bachi, the "Debtors"), debtors and debtors-in-possession, hereby submit their *amended* emergency motion (the "Motion")[1] requesting that the Court enter an interim order: (a) authorizing Debtors' use of cash collateral on an emergency interim basis pending a final hearing, and granting related

---

[1] Debtors' original emergency motion [ECF No. 19] was filed prematurely and contained certain incorrect information. This amended Motion is intended to replace their prior Motion in its entirety.

relief; and (b) scheduling a final hearing with respect to the Motion for consideration of entry of a final order for the period from the final hearing through and including April 2019, or the Debtors' emergence from bankruptcy, whichever is earlier. This Motion is made and based on the points and authorities herein, the *Omnibus Declaration of Lorin Watada in Support of Debtors' Initial Emergency Motions and Related Relief* (the "Omnibus Declaration"), the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any arguments of counsel entertained by the Court at the time of the hearing on this matter.

## I. Introduction

1. Bachi Burger owns and operates the Bachi Burger restaurant located at 9410 W. Sahara Avenue, Suite 150, Las Vegas, Nevada, and Green Revolutions owns and operates the Bachi Burger restaurant located at 470 E. Windmill Lane, Suite 100, Las Vegas, Nevada. Both restaurants (the "Businesses") specialize in Asian-style gourmet burgers and sides. Lorin Watada, the Debtors' managing member, manages and operates the Businesses.

2. On November 1, 2018 (the "Petition Date"), Debtors filed their respective voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing their bankruptcy cases (the "Chapter 11 Cases"). Debtors are authorized to operate their Businesses and property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Debtors are small business debtors pursuant to section 101(51D) of the Bankruptcy Code. Additional information regarding the Debtors' businesses is contained in the *Omnibus Declaration of Lorin Watada in Support of Debtors' Initial Emergency Motions and Other Relief* (the "Omnibus Declaration"). No official committees have been formed in these Chapter 11 Cases.

## II. Jurisdiction and Venue

3. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to LR 9014.2, Debtors consent to the entry of final orders and judgments by the bankruptcy judge. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

### III. Summary of Relief Requested

4. Debtors seek entry of an order: (a)(i) authorizing the use of cash collateral, including cash on hand, proceeds and profits that may be received post-petition through continued operation of their Businesses on an emergency, interim basis from the date of an interim hearing (the "Interim Hearing") on this Motion through and including the date of a final hearing (the "Final Hearing") on this Motion, as necessary to the continued operation of the Business and as necessary to avoid immediate and irreparable harm, (ii) granting related relief; and (b) scheduling the Final Hearing to consider final relief authorizing Debtors' use of cash collateral for the period from the Final Hearing through and including April 2019, or the Debtors' emergence from bankruptcy, whichever is earlier, for use in the ordinary course operations of their Businesses, and without prejudice to potential continued extensions of such use as may be requested on a further noticed motion or per agreement with any applicable secured creditors.

5. Debtors propose that the Court authorize the use of Cash Collateral on an emergency interim basis in accordance with the form of interim order (the "Interim Order") attached as **Exhibit 1** and in accordance with the budgets (the "Budgets") attached as **Exhibit 2** for Bachi Burger, and as **Exhibit 3** for Green Revolutions, provided that for any expenditure line item provided in the Budget in any given month, Debtors may use cash collateral in excess of such amount set forth in the Budgets, so long as the percentage of deviation for each line item shall not exceed fifteen percent (15%) for said expenditures with positive variances carrying forward.

6. As Debtors' emergency interim request pending a Final Hearing, which is necessary to avoid immediate and irreparable harm to its Businesses and the bankruptcy estates pending a Final Hearing, Debtors request that it be permitted to use cash collateral to pay all items in the Budgets for the period from the Petition Date through the date of the Final Hearing. The Budgets for this interim period include critical expenses necessary to the basic maintenance and operation of the Debtors' Businesses, and which will serve to preserve and protect them and their value pending a Final Hearing. The Budgets include only payments incurred in the ordinary course and operations of the Debtors' Businesses.

## IV. Statement of Facts

7. The Debtors' Chapter 11 Cases were filed principally to forestall certain collection actions by the State of Nevada Department of Taxation and the Internal Revenue Service for certain tax liabilities arising out of or relating to the Businesses, and to restructure those debts to be repaid over time through continued operation of the Businesses. The Debtors anticipate filing a proposed joint chapter 11 plan of reorganization in the first two months of these cases proposing to repay the allowed claims of these taxing authorities in full over the up to five year time period permitted under applicable law. The State of Nevada Department of Tax apparently has recorded certain tax liens against the Debtors in the Official Records of Clark County, Nevada, and thus could assert some interest in the Debtors' property, however, it is unclear if that extends to and/or is properly perfected in the Debtors' cash and cash collateral.

8. Per a UCC financing statement search with the Nevada Secretary of State, the only other parties with potential interests in and to the Debtors' cash collateral and related personal property are East Bay Cap, LLC a/k/a Snap Cap who provided certain accounts receivables financing, and U.S. Foods, however, both of those parties have been paid compromised amounts in satisfaction of their prior debts and thus they do not have any remaining claims.

9. No party has actual possession or control via a deposit account control agreement over the Debtors' cash and cash collateral.

10. Any alleged secured creditors' interests will be adequately protected through the continued operations of the Debtors' Businesses and the resulting preservation of value, which continued operations will also allow the Debtors to generate the funds necessary to fund its proposed chapter 11 plan of reorganization that will pay all creditors with allowed claims in full.

11. In the ordinary course of business, Debtors have ongoing obligations including paying employee salaries, food providers, utilities, insurance, and other necessary maintenance and operating expenses as detailed in the Budgets. The expenses as detailed in the Budgets are reasonable and necessary to the operations of the Businesses, in the ordinary course of business, and are consistent with the Debtors' historical operations.

12. Provided that the Businesses continue to operate in the ordinary course of business,

they will not decrease in value during the pendency of these proceedings. Absent immediate access to Cash Collateral consistent with the Budgets, Debtors will have insufficient cash to continue operations, and the Businesses will be forced to cease operations, thereby eliminating Debtors' source of revenue, eliminating any chance they have for a successful reorganization, and resulting in immediate and irreparable harm to Debtors and their estates. Furthermore, the ongoing business and the use of cash collateral generated will maintain and preserve the Businesses serving as any secured creditors' collateral, and thus also benefits each of them as well. If the Businesses do not remain operating during the pendency of these proceeding, Debtors will be required to shutdown, all employees' jobs will be lost, and any goodwill with its customers will be eliminated, thus leaving little, if any, remaining value for any alleged secured creditors.

## V. Legal Argument

**A.    The Proposed Use of Cash Collateral is Appropriate and Should be Authorized.**

13.    Section 363 of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless each entity with an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes the use in accordance with that section. See 11 U.S.C. § 363(c)(2); see also Sears Savings Bank v. Tucson Industrial Partners, 129 B.R. 614 (B.A.P. 9th Cir. 1991).

14.    Section 363(e) of the Bankruptcy Code provides, in relevant part, that "at any time, on request of an entity that has an interest in property used . . . or proposed to be used, by the trustee, the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

15.    Section 363(c)(3) of the Bankruptcy Code permits a preliminary hearing and order for use of Cash Collateral until a final hearing on the matter can be held. See 11 U.S.C. § 363(c)(3). In addition, this section states that "[t]he court shall act promptly on any request for authorization under paragraph 2(B) of this subsection." Id. Bankruptcy Rule 4001(b)(2) specifically authorizes the bankruptcy court to conduct a preliminary hearing and authorize the use of cash collateral as necessary to avoid immediate irreparable harm to the estate.

16.    Pursuant to section 363(a) of the Bankruptcy Code, cash collateral includes cash,

cash equivalents, deposit accounts, rents, and proceeds "in which the estate and an entity other than the estate have an interest." Whether an entity has a security interest in a particular type of property is generally determined by state law. See <u>Butner v. United States</u>, 440 U.S. 48, 57 (1979); <u>Raleigh v. Illinois Dep't of Revenue</u>, 530 U.S. 15, 20 (2000). The "interest" set forth in section 363(a) of the Bankruptcy Code refers to a <u>valid and perfected security interest</u> between the parties that secures the cash collateral. See <u>Waldron v. Nw. Acceptance Corp. (In re Johnson)</u>, 62 B.R. 24, 28-29 (B.A.P. 9th Cir. 1986); <u>In re Corner Pockets of the Sw., Inc.</u>, 85 B.R. 559, 562 (Bankr. D. Mont. 1988).

17. To the extent Debtors are authorized to use cash collateral, commencing on the Petition Date and each date thereafter, as set forth in the Budget, Debtors will generate post-petition revenue in the form of continued profits. Although section 552(a) of the Bankruptcy Code states the general rule that property acquired after the commencement of a bankruptcy case is not subject to pre-petition liens, section 552(b)(1) of the Bankruptcy Code provides as follows:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

18. Further, even to the extent section 552(b)(1) of the Bankruptcy Code provides that either secured creditors' pre-petition security interests extends to revenues generate post-petition, it also allows the Court, and "based on the equities of the case," to order otherwise. See 11 U.S.C. § 552(b)(1). As stated by one court:

> Even if there is a valid security interest in post-petition acquired property constituting the proceeds, products, offspring, or profits of pre-petition collateral, § 552(b)(1) still allows a court to trump a pre-petition lien to this post-petition lien to this post-petition acquired property after notice and a hearing and based on the equities of the

6

> case. Depending on the equities of the case, profit or loss of the property may be given to the estate or to the secured party, or apportioned between them. The equities of the case doctrine is intended to ensure that secured creditors do not receive a windfall benefit when a trustee uses assets of the estate, for example, to finish uncompleted inventory, and it is also used to adjust recovery by a secured credit in situations where there is an improvement or decline in the post-petition collateral, especially in situations where the change in value is brought about by a party in the bankruptcy.

In re Barbara K. Enterps., Inc., No. 08-11474, 2008 WL 24396549, at *11 (Bankr. S.D.N.Y. 2008).

19. The case law and applicable legislative history accompanying section 552(b) of the Bankruptcy Code demonstrate that this equitable exception applies where an expenditure of estate funds preserves or increases the value of the collateral subject to the security interest in question. See H. Rep. No. 595, 95th Cong., 1st Sess. 376-77 (1977); J. Catton Farms., Inc. v. First Nat'l Bank of Chicago, 779 F.2d 1242, 1246 (7th Cir. 1985); Wolters Village, Ltd., v. Village Props., Ltd (In re Village Props., Ltd.), 723 F.2d 441, 444 (5th Cir. 1984); In re Carbone Cos., 395 B.R. 631, 636-37 (Bankr. N.D. Ohio 2008); In re Gunnison Ctr. Apartments, LP, 320 B.R. 391, 397-99 (Bankr. D. Colo. 2005) (finding that a secured creditor was adequately protected where the cash collateral was utilized to "operate the property in good fashion, pay the expenses of operation and the costs of maintenance to preserve and protect the property, and account for the monies received and the expenses paid"); In re Franklin Pembroke Venture II, 105 B.R. 276, 278 (Bankr. E.D. Pa. 1989); McCombs Props. VI, Ltd. v. First Tex. Sav. Ass'n (In re McCombs Props. VI, Ltd.), 88 B.R. 261 (Bankr. C.D. Cal. 1988); Hartsgan v. Pine Lake Village Apt. Co. (In re Pine Lake Village Apt. Co.), 16 B.R. 750 (Bankr. S.D.N.Y. 1982) (holding that despite the absence of a creditor's consent to the debtor's use of post-petition cash collateral, the debtor was authorized to use cash collateral to maintain its apartment property, and that this would ensure that the creditor was adequately protected).

20. As applied to the case at hand, as illustrated by their Budgets, the Debtors are only seeking to use cash collateral to preserve, maintain and operate the Businesses in the ordinary course of business. Each expense included in the Budgets is necessary and appropriate to the Businesses, which is Debtors' sole means of generating revenue. Accordingly, Debtors should be granted authority to use cash collateral consistent with the Budget and the other terms and

conditions as set forth herein, as such use to maintain the Businesses and allow them to eventually repay the obligations in full via a confirmed chapter 11 plan itself provides any alleged secured lenders with adequate protection.

21.     Second, Debtors assert that pursuant to section 552 of the Bankruptcy Code, any alleged secured creditors in this case lack a perfected security interest in the proceeds, products, offspring, or profits generated from the Businesses post-petition, such that they lack standing to contest the Debtors' use of cash collateral.  Moreover, even to the extent any secured creditors' security interests do extend to such post-petition collateral, it is necessary and appropriate based on the "equities of the case" pursuant to section 552(b)(1) to authorize the use of cash collateral in the case at hand in order to allow the Debtors to continue operating and to generate the future earnings necessary to allow them to pay back all creditors in full over time, which ability the Debtors have as set forth in the Budgets.

**B.     The Need for Immediate Relief Pending a Final Hearing**

22.     Pursuant to Bankruptcy Rule 4001(b), a final hearing on a motion to use cash collateral may not be commenced earlier than fifteen (15) days after service of such motion.  The Court, however, is authorized to conduct an expedited hearing prior to the expiration of such 15-day period and to authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

23.     The Ninth Circuit has recognized that immediate interim relief may be crucial to the success of a business reorganization:

> We realize that in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld and that reorganization under the Bankruptcy Code is perilous process, seldom more so that at the outset of the proceeding when the debtor is often without sufficient cash flow to fund a central business operation.  It is for this reason that Congress specified that hearings concerning the use of cash collateral shall be scheduled in accordance with the needs of the debtor.

Owens-Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.), 759 F.1d 1440, 1449 n.21 (9th Cir. 1985) (quotations omitted).

24.     Pursuant to Bankruptcy Rule 4001(b), Debtors request that the Court (i) schedule

8

the Interim Hearing and a Final Hearing to consider approval of Debtors' use of cash collateral and (ii) authorize Debtors, pursuant to the terms of the Interim Order, to use cash collateral in accordance with the Budget pending the Final Hearing. If Debtors are unable to obtain the immediate use of cash collateral and is denied the ability to use the income generated from the Business pending the Final Hearing, they will be unable to maintain and operate their Businesses and Debtors will be forced to cease business operations with a concomitant immediate and irreparable harm to the value of the Businesses and ultimately the estates and their creditors.

### C.  Waiver of the Stay on the Effectiveness of the Interim Order is Warranted.

25.  Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." In view of the urgency of the relief requested herein and the risk to Debtors' operations if Debtors cannot operate, a fourteen-day stay of the relief sought herein is impractical. Accordingly, Debtors request that this Court waive the stay under Bankruptcy Rule 6004(h) and provide in the order granting the relief sought herein that such order shall be effective immediately.

### VI.  Reservation of Rights

26.  Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against Debtors; (ii) a waiver of Debtors' or any party in interest's rights to dispute any claim'; or (iii) an approval or assumption of any agreement or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, nothing herein is intended and should not be construed as an admission to any claim's validity or a waiver of Debtors' rights to dispute such claim subsequently.

. . .

. . .

. . .

### VII. Conclusion

WHEREFORE, Debtors respectfully request that the Court enter the Interim Order thereby: (1) authorizing and approving Debtors' emergency, interim use of cash and cash collateral, subject to the terms and conditions herein and consistent with the Budgets through and including the date of a Final Hearing; (2) schedule a Final Hearing on use of cash and cash collateral no sooner than 15 days after the interim hearing; and (3) granting such other and further relief as is just and proper.

DATED:  November 5, 2018.

By:  /s/ Matthew C. Zirzow
LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Proposed Attorneys for Debtors