Nicholas Strozza, Assistant United States Trustee
State Bar No.: CA 117234
Jason M. Blumberg, Trial Attorney
State Bar No.: NY 4055257
jason.blumberg@usdoj.gov
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Tel.: (702) 388-6600
Fax: (702) 388-6658

E-Filed:  November 8, 2018

Attorneys for the United States Trustee for Region 17
    TRACY HOPE DAVIS

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BACHI BURGER, L.L.C.,<br><br>                Debtor. | Case No: BK-S-18-16584-ABL<br><br>Chapter 11<br><br>Date:  November 9, 2018<br>Time:  1:30 pm<br>Place:  Courtroom 1, Foley Fed. Bldg. |

**THE UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO
DEBTOR'S FIRST DAY MOTIONS [ECF NOS. 18, 22 & 23]**

To the Honorable AUGUST B. LANDIS, United States Bankruptcy Judge:

    Tracy Hope Davis, United States Trustee for Region 17 (the "United States Trustee"), hereby presents these objections (the "Omnibus Objection") to the following motions filed by the above-captioned debtor Bachi Burger, L.L.C. (the "Debtor"):

- The Debtor's *Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Pursuant to Fed. R. Bankr. P. 1015(b)* (ECF No. 18) (the "Joint Administration Motion");

- The Debtor's *Amended Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(B) for Entry of Interim and Final Orders (A)(I) Authorizing the Use of Cash Collateral, and (II)*

*Granting Related Relief, and (B) Scheduling a Final Hearing* (ECF No. 22) (the "Cash Collateral Motion"); and

- The Debtor's *Emergency Motion for Order: (I) Authorizing Debtors to Pay Wages, Salaries, Benefits, Reimbursable Business Expenses, and Other Employee Obligations; and (II) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* (ECF No. 23) (the "Wages Motion" and together with the Joint Administration Motion, and the Cash Collateral Motion, the "First Day Motions").[1]

The Omnibus Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Omnibus Objection.[2]

## I.   MEMORANDUM OF POINTS AND AUTHORITIES

**A.   Introduction.**

The Debtor's requests for relief in the First Day Motions should either be (a) denied or (b) limited to only emergency relief to permit the Debtor to sustain business operations. A meeting of creditors pursuant to 11 U.S.C. § 341 has not been held. A creditors committee has not yet been formed. Therefore, the Court should either sustain the United States Trustee's Omnibus Objection or adjourn the hearing on these First Day Motions to a later date to allow any creditors committee or other creditors a meaningful opportunity to evaluate the First Day Motions.

---

[1] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Omnibus Objection contains factual assertions predicated upon statements made by the Debtor, any of its current or former agents, attorneys, professionals, officers, directors or employees, the United States Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

[2] The United States Trustee takes no position on the Debtor's Motion to designate Lorin Watada as its responsible person pursuant to Fed. R. Bankr. P. 9001(5) or the Debtor's motion regarding adequate assurance for utility companies. See ECF Nos. 20, 21.

**B.      Background Facts and Procedural Posture.**

1.      On November 1, 2018 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 bankruptcy petition.  See ECF No. 1.[3]

2.      On the Petition Date, the Debtor filed its list of 20 largest unsecured creditors.  See ECF No. 1, pp. 7 to 9 of 12.  To date, however, the Debtor has not filed the required Schedules and Statements, including Schedule A/B, Schedule D, Schedule E/F and the Statement of Financial Affairs.  See case docket generally.

3.      The Debtor "owns and operates the Bachi Burger restaurant located at 9410 W. Sahara Avenue, Suite 150, Las Vegas, Nevada."  The Debtor's managing member is Lorin Watada.  See Joint Administration Motion, at ¶ 1; ECF No. 1, at p. 4 of 12 (Petition).

4.      Mr. Watada is also the managing member of Green Revolutions LLC ("Green Revolutions").  Green Revolutions "owns and operates the Bachi Burger restaurant located at 470 E. Windmill Lane, Suite 100, Las Vegas, Nevada."  See Joint Administration Motion, at ¶ 1. Green Revolutions is a debtor in Case No. 18-16585-BTB.

5.      On November 5 and November 6, 2018, the Debtor filed the First Day Motions. The motions are supported by Mr. Watada's omnibus declaration.  See ECF No. 24.

6.      On November 6, 2018, the Debtor filed an *ex parte* application for order shortening time with regard to the First Day Motions. See ECF No. 25.

7.      No trustee has been appointed in the Debtor's case. See case docket generally.

---

[3]     Unless otherwise noted, "ECF No." refers to the main bankruptcy docket for case number, BK-S-18-16584-ABL.

8. An official committee of unsecured creditors has not yet been appointed. See case docket generally.

9. The date first set for the meeting of creditors in this case is December 6, 2018 at 3:00 pm. See ECF No. 3. The date first set for the meeting of creditors in Green Revolution's case is December 6, 2018 at 4:00 pm. See ECF No. 3 in Case No. 18-16585.

## II. ARGUMENT

10. Four principles for Courts to consider with regard to first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.
>
> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

See In re The Colad Group, Inc., 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

### A. The Joint Administration Motion

11. As part of the Joint Administration Motion, the Debtor seeks joint administration of its case with that of Green Revolutions. The Debtor does not seek substantive consolidation. See Joint Administration Motion, at ¶ 6.

12. If the Joint Administration Motion is granted, the Debtor and Green Revolutions should each file separate operating reports. Doing so will afford creditors and parties in interest the detail necessary to assess the financial activities of each individual debtor. Separate reporting

will also provide the information necessary to accurately calculate quarterly fees payable under 28 U.S.C. § 1930(a)(6).  Cf. Fed. R. Bankr. P. 2015(a)(5).

13. The Joint Administration Motion also contemplates that the meetings of creditors for both cases will be held on December 6, 2018 at **3:00 p.m.** See ECF No. 18-1, at p.4 of 5 [proposed Order].

14. While that is the date and time for the first meeting in the Debtor's case, the date and time for the first meeting in the Green Revolutions case is December 6, 2018 at **4:00 p.m.** Green Revolutions should, therefore, provide timely notice of the new time to its creditors.

B. **The Cash Collateral Motion**

15. As part of the Cash Collateral Motion, the Debtor seeks interim authorization to use cash collateral "in accordance with the budgets … attached as Exhibit 2 for [the Debtor], and as Exhibit 3 for Green Revolutions …." See Cash Collateral Motion, at ¶¶ 4-5.

16. Interim relief is appropriate only to the extent "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." See Fed. R. Bankr. P. 4001(b)(2). Several items on the budget may not meet this standard.

17. The budgets identify proposed expenditures only on a monthly basis - as opposed to a weekly basis.  That is, expenditures are identified for each of the entire months of November 2018, December 2018, January 2019, February 2019, March 2019, and April 2019.  See ECF No. 22-1, at p. 7-8, 16-17 of 22.[4]

18. As a result, it is unclear if all the Debtor's proposed expenditures for November 2018 must be paid prior to a final hearing to avoid immediate and irreparable harm.  For instance,

---

[4] The proposed expenditures from November 2018 to April 2019 do not appear to include quarterly fees payable under 28 U.S.C. § 1930(a)(6).

the budget for the Debtor includes $3,923.08 for "Corporate Management," while the budget for Green Revolutions includes $9,153.85 for "Corporate Management." See ECF No. 22-1, at p. 7, 16 of 22. These and other expenses may be payable after a final hearing.

C. **The Wages Motion should be denied or granted only on a limited basis.**

19. As set forth in the Wages Motion, the Debtor and Green Revolutions employ "approximately 35 hourly employees and 3 salaried employees" The Debtor and Green Revolutions estimate that they owe prepetition wage obligations of "approximately $17,500.00 for service employees and $7,646.00 to management." There may also be related obligations to the taxing authorities for withholding taxes and FICA contributions, as well as "Reimbursable Business Expenses" owed to employees. See Wages Motion, at ¶¶ 4-7.[5]

20. Through its Wages Motion, the Debtor seeks a court order to authorize the payment of the foregoing claims, provided that "Wage Obligations to be paid to or for the benefit of each of the Employees will not exceed $12,850 per employee, consistent with the cap provided in Section 507(a)(4) of the Bankruptcy Code." See Wages Motion, at ¶ 8; see also ECF No. 23, at p. 10 of 11 [proposed order].

21. The Wages Motion is predicated on 11 U.S.C. §§ 105(a), 363(b), 507(a)(4), and 507(a)(5). See Wages Motion, at ¶ 10.

22. Ninth Circuit case law casts considerable doubt on whether the necessity of payment doctrine applies outside the context of railroad reorganizations and otherwise survived the enactment of the Bankruptcy Code. See In re B & W Enterprises, Inc., 713 F.2d 534, 537 (9th Cir. 1983) ("The Necessity of Payment Rule was created for and has been applied only to railroad

---

[5] The Debtor and Green Revolutions estimate that the "Reimbursable Business Expenses" do not exceed $1,000. See Wages Motion, at ¶ 7.

cases. Absent compelling reasons, we deem it unwise to tamper with the statutory priority scheme devised by Congress in the 1978 Act.").

23. With respect to the argument that a bankruptcy court's general equitable powers authorize such relief, the Ninth Circuit observed, "[t]here is no indication that Congress intended the courts to fashion their own rules of super-priorities within any given priority class." Id.; see also Willms v. Sanderson, 723 F.3d 1094, 1103 (9th Cir. 2013) ("A bankruptcy court's equitable powers 'must and can only be exercised within the confines of the Bankruptcy Code.'") (quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197 (1988)).

24. Moreover, the "general rule is that a distribution on prepetition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstance." See In re Airbeds, Inc., 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988).

25. To the extent Section 363(b) can be a basis for paying a pre-petition claim, courts have required debtors to demonstrate that (i) the recipient of the payment would otherwise cease doing business with the debtor and (ii) disfavored creditors will not be harmed by the payment. See, e.g., In re Kmart Corp., 359 F.3d 866, 873-74 (7th Cir. 2004).

26. Here, the United States Trustee takes no position on the payment of (i) pre-petition claims of the Debtor's non-insider employees that are entitled to priority under Sections 507(a)(4) and 507(a)(5) or (ii) the related payroll taxes, deductions and withholdings.

27. However, the United States Trustee opposes "early" payment to (i) the Debtor's insiders, and (ii) holders of claims for "Reimbursable Business Expenses."

28. According to the Debtor, the only "insider" that would receive payment is Mr. Watada. See Wages Motion, at ¶ 8. The Wages Motion does not address whether the payments are consistent with 11 U.S.C. §§ 503(c)(1) or (3). In addition, the Wages Motion does not

demonstrate that immediate payment to Mr. Watada is necessary to avoid immediate and irreparable harm to the Debtor.  <u>See</u> Fed. R. Bankr. P. 6003(b).

29. The priority status of the "Reimbursable Business Expenses" is unclear.  There is, for instance, little indication to whom these expenses are owed.   In absence of clear indication that the "Reimbursable Business Expenses" are entitled to priority, there is little basis to pay those claims early.  <u>See</u> <u>In re EcoSmart, Inc.</u>, 2015 WL 9274245, at *9 (Bankr. C.D. Cal. Dec. 18, 2015) ("[A]bsent the priority status of claims, the courts have not seen justification to allow payments of prepetition claims of so called 'critical vendors' ….").

///

///

///

### III. CONCLUSION

30. In view of the limited notice provided to creditors, the First Day Motions should either be denied in the entirety or any relief granted should be limited for the Debtor to sustain operations and to provide adequate protection, if any. Alternatively, the First Day Motions should be adjourned until a later date. The adjournment would permit parties that were not provided sufficient notice and any committee the opportunity to be heard on the First Day Motions.

31. If the Court grants any of the relief sought in the First Day Motions, the United States Trustee requests that any committee appointed under Section 1102 be permitted the right to reconsider the First Day Motions.

32. The United States Trustee reserves all rights to object to the final relief granted to these First Day Motions.

**WHEREFORE**, the United States Trustee requests the Court to sustain her Omnibus Objection; and grant such other relief as is just under the circumstances.

Dated: November 8, 2018

    Respectfully Submitted,

    TRACY HOPE DAVIS
    UNITED STATES TRUSTEE

    By:   /s/ *Jason Blumberg*
           Jason Blumberg
           Trial Attorney for the United States Trustee